IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

FILED

2018 OCT 31 P 3: 54

| In re: ALEXANDER LOUIS BEDNAR, Debtor. | Case Number: 15-11916 TRC<br>Chapter 7 |
|---|---|

Alexander L. Bednar
    Plaintiff
v

Adv. Proc. No:18-01096

Franklin American Mortgage Company
Federal National Mortgage Association
Oklahoma County Sheriff
    Defendants

And

Alexander Bednar
v
RCB Bank

### MEMORANDUM OF LAW IN SUPPORT OF DEBTOR'S REQUEST FOR INJUNCTION *PENDENT LITE* AND THIS COURT'S ABILITY TO ISSUE INJUNCTIVE RELIEF

Having served each Defendant in this adversarial proceeding, Your Debtor has asked for preliminary injunction and/or restraining order, at the beginning of this case, based on Defendants' purposeful violations of a settlement agreement reached in court-ordered mediation. Rule 105 allows this bankruptcy court to review its previous order sending parties to mediate in good faith and to subsequently enforce a settlement therefrom with injunctive relief as it sees fit, as this is a core proceeding.

This court has plenary power to issue an injunction as "the enforcement of orders resulting from core proceedings are themselves...core proceedings." *In re Williams*, 256 B.R. 885, 892 (8th Cir. BAP 2001) ("It is ...well established that bankruptcy courts retain jurisdiction after a case has been dismissed or closed to interpret or enforce previously entered orders."); *see In re Skinner*, 917 F.2d 444, 448 (10th Cir. 1990) ("Civil contempt proceedings arising out of core matters are themselves core matters.")

DEBTOR NEED NOT PROVE IRREPARABLE HARM FOR INJUNCTION UNDER SECTION 105

When seeking a preliminary injunction under a matter arising under Section 105, a Debtor is not required to prove irreparable harm, as a court always has jurisdiction to enforce settlement agreements

arising from previous orders, particularly, as in this case, if abuse of process is claimed. *In re Ames Dept Stores, Inc.* 317 B.R. 260, 273-74 (Bankr. S.D. N.Y. 2004).[1] As the enforcement of a court ordered mediation is itself a core proceeding, pursuant to Section 105 of the Bankruptcy Code, this Court has the ability to enjoin parties, to enjoin a court (if it chooses to), and to certify questions of law to the Oklahoma Supreme Court to ascertain whether parties before it have also violated state law.

<u>DEBTOR/PLAINTIFF NEED ONLY TO HAVE SERVED PARTIES FOR IN PERSONAM JURISDICTION REGARDING A PRELIMINARY INJUNCTION</u>

In Northern District of Oklahoma Bankruptcy case number 02-0073-M, Adversarial proceeding number 04-01038 (Chapter 7), an extremely similar fact pattern as in this case unfolded. A party (Ronald Saffa) commenced an adversarial proceeding and asked for an expedited hearing regarding a preliminary injunction based on violations of a settlement order, and to prohibit continued violations by the Defendant. See Exhibit 2 (BAP Appeal No. 08-48, Docket No. 28, filed November 1, 2004). As in this case, the Plaintiff issued summons and filed his complaint. The Court granted the preliminary injunction, and determined it had jurisdiction to do so. The Bankruptcy Appellate Panel of the Tenth Circuit (Exhibit 2) affirmed the Bankruptcy Court's permanent injunction based on a settlement between the parties. As such, Debtor has satisfied the prerequisites of in personam jurisdiction to seek a preliminary injunction.

<u>ROOKER-FELDMAN DOCTRINE DOES NOT APPLY AS DEBTOR IS NOT ATTEMPTING TO COLLATERALLY ATTACK STATE COURT JUDGMENTS THROUGH THIS CASE</u>

As very recently clarified by the Tenth Circuit Court of Appeals in *Mayotte v. U.S. Bank*, N.A.,25 a Rooker-Feldman issue only exists to the extent a federal action "tries to modify or set aside a state-court judgment because the state proceedings should not have led to that judgment." In a fact pattern almost on point, the Bankruptcy Appellate Panel of the Tenth Circuit stated earlier this year[2] the threshold test to

---

[1] The Court concluded: "It is manifestly proper, in this court's view, to invoke Section 105(a) 'to enforce and implement' the Court's earlier orders, and to prevent abuses of process…It is not surprising that ***the usual grounds for injunctive relief, such as irreparable injury, need not be shown in a proceeding for an injunction under section 105(a)***."(emphasis)

[2] In its April 3, 2018 Published Opinion in BAP Appeal No. 17-31 (docket #62) the appellate court stated "in light of Mayotte…it is simply frivolous to argue the bankruptcy court lacked jurisdiction…the bankruptcy court committed no error in determining it had jurisdiction over [the] adversary complaint."

2

determine if Rooker-Feldman is at play: "we must consider *whether the success of the claims [Debtor] raised in the adversary proceeding was contingent upon demonstrating any prior state court judgment was reached in error*." (Emphasis). Because the Debtor's adversary complaint in that case (as in this case) "sought damages for Appellants' violation of the discharge injunction under 11 U.S.C. § 542 and for violation of [a stipulated Order]" the appellate court upheld the bankruptcy court's jurisdiction over the adversary proceeding. See Exhibit 1 (copy of actual BAP Opinion section on jurisdiction highlighted).

Overall, Debtor anticipates that creditors Franklin American, RCB, and Fannie Mae will argue that Debtor is attempting a collateral attack on a state court judgment that they knowingly procured by concerted action in violation of this Court's directive for RCB to mediate in good faith, and the resulting settlement agreement, that Defendants' attorneys were all aware of. Because the state court has not analyzed or ruled on alleged violations of this Court's Discharge Injunction Order, and as the State Court has not interpreted violations of this court's Order regarding mediation and the resulting agreement, the Rooker-Feldman doctrine is inapplicable.

<u>PLAINTIFF DEBTOR IS NOT REQUIRED TO PLACE SECURITY DEPOSIT IN COURT IN SEEKING PRELIMINARY INJUNCTION PENDENT LITE</u>

Rule 7065 (which references FRCP Rule 65), states: "a temporary restraining order or preliminary injunction *may be issued on application of a debtor*, trustee, or debtor in possession *without compliance with Rule 65(c)*." (emphasis added). As such, Rule 7065 allows this court to issue the equitable relief sought by Debtor in adversarial proceedings, without the need for Debtor to place a security deposit in this court.

<u>THIS COURT HAS THE POWER TO DIRECTLY ENJOIN PARTIES AND/OR OTHER COURTS</u>

    1. <u>Automatic Stay litigation gives guidance to court's ability to issue injunctions.</u>

The automatic stay provisions under section 362(a) of the Bankruptcy Code apply to "all entities" and enjoin "the commencement or continuation ... of a judicial, administrative, or other action or proceeding against the Debtor..." 11 USC §362(a)(1). The United States Supreme Court and lower courts have made it clear that bankruptcy courts may enjoin state courts. *See e.g. Celotex Corp. v. Edwards*, 514

US 300, 323 n.9 (1995)(Stevens, J. Dissenting)("The Courts of Appeals have uniformly held that 'entities,' as used in §362, includes courts"); *see Ellis v. Consol. Diesel Elec. Corp.*, 894 F.2d 371, 372-73 (10th Cir. 1990)(district court entry of summary judgment violated automatic stay).

2. The Power to issue injunctions is not limited to the automatic stay, and applies to core proceedings brought under section 105.

Section 105 of the Bankruptcy Code confers the same injunctive power on courts as evidenced by its plain language. As the Seventh Circuit emphasized, section 105 allows this Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." *Caesars Entm't Operating Co., Inc. v. BOKF, N.A.* (*In re Caesars Entm't Operating Co., Inc.*), 808 F.3d 1186, 1188 (7th Cir. 2015) (citing 11 U.S.C. § 105). This is a "broad grant of power" that provides "the extensive equitable powers that bankruptcy courts need in order to be able to perform their statutory duties." *Id.*

3. There is no limit in core proceedings to a bankruptcy court's ability to enjoin parties and non-parties as it sees fit to enforce prior orders, including enjoining proceedings in district court (federal or state).

The Seventh Circuit has ruled that a bankruptcy court may not only enjoin parties who are lenders from proceeding with their claims, but also that the court may stay those lenders' existing suits against a Debtor. That court stated that the Debtors' interests "would be furthered by a temporary injunction staying the lenders' lawsuits against [Debtors]." Id. at 1189 (emphasis added); see also id. at 1188 ("The bankruptcy judge's exercise of jurisdiction over these other suits would have been constitutional....") (emphasis added). In its leading decision on section 105, the Seventh Circuit likewise did not limit the court's section 105 power to simply enjoining parties: "[i]n limited circumstances, the trustee may temporarily block adjudication of claims that are not property of the estate by petitioning the bankruptcy court to enjoin the other litigation." *Fisher v. Apostolou*, 155 F.3d 876, 882 (7th Cir. 1998).

A bankruptcy court may halt proceedings in a district court, whether state or federal. *Caesars Entm't Operating Co., Inc. v. BOKF, N.A.* (*In re Caesars Entm't Operating Co., Inc.*), 533 B.R. 714, 719 (Bankr. N.D. Ill. 2015) (emphasis added); *see also id., citing In re A.H. Robins Co.*, 788 F.2d 994, 1003

4

(4th Cir. 1986) ("bankruptcy courts have jurisdiction to enjoin actions 'in other courts, whether state or federal.'").

4. This Court's Injunctive Power in this core proceeding is extremely broad.

Injunctions issued by bankruptcy courts under section 105 may enjoin "all entities" from "commencing or continuing any judicial, administrative or other proceeding involving any of the Debtors." 514 U.S. at 323 n.9 (seven US Supreme Court Justices upholding bankruptcy court's ability to enjoin a federal district court).

5. A Section 105 injunction does not violate the Anti Injunction act authored by Congress and allows for stay of state court orders.

The Anti-Injunction Act does not prohibit this Court from enjoining the Oklahoma State District Court or proceedings before that court, or parties in that Court. The Act provides that "[a] court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. Congress provided such an exception in section 105. As the Sixth Circuit concluded, "courts have widely affirmed that the 'expressly authorized' exception to the Anti-Injunction Act includes injunctions authorized under the bankruptcy laws." *Parker v. Goodman (In re Parker)*, 499 F.3d 616, 627 (6th Cir. 2007) (citing cases); *see also In re Bahary*, 528 B.R. 763, 775 (Bankr. N.D. Ill. 2015) (explaining that section 105 orders "come within the exceptions noted in the Act for injunctions 'expressly authorized by Act of Congress' and '*where necessary in aid of its jurisdiction*'").

Injunction of courts or of parties are often treated identically, and this Court may enjoin either or both. *See* 17 A Wright & Miller, Federal Practice and Procedure, § 4222 (3d ed.) (in Anti-Injunction Act context, explaining that "it is apparent that the proceedings of a state court upon a case are as much interfered with when one of the parties to the suit is enjoined from continuing the litigation as they are when the court itself is enjoined"); *see also Celotex,* 514 U.S. at 323 n.9.

6. Although this Court may enjoin State Court litigation, it could choose to enjoin the Defendants themselves, who have been served with this injunction case, and who are alleged to have acted in concert.

5

Often, courts understandably prefer to enjoin parties rather than courts out of deference to other judges and because that is all that is typically needed to effectuate relief. For example, in *Lentz v. Cahaba Disaster Relief, LLC* (*In re CDP Corp.*), the bankruptcy court declined to enjoin a district court "in the absence of binding authority explicitly empowering this Court to directly enjoin an Article III court" and instead simply enjoined the parties from proceeding before the district court to provide the requested relief. 462 B.R. 615, 628, 634 (Bankr. S.D. Miss. 2011). *The bankruptcy court in State St. Bank & Trust Co. v. Park* (*In re Si Yeon Park, Ltd.*) similarly enjoined the parties from proceeding in state court instead of enjoining the state court itself, choosing "to rely on the state court to recognize federal jurisdiction in this matter." 198 B.R. 956, 959 (Bankr. C.D. Cal. 1996).

## THIS COURT CAN ISSUE AN INJUNCTION DURING THE CASE AND CERTIFY QUESTIONS TO THE OKLAHOMA SUPREME COURT REGARDING CONCERNS ABOUT STATE ACTION

7. <u>This Court can invoke Section 105 to issue an injunction pendent lite, and certify questions of law to the Oklahoma Supreme Court regarding whether the Defendants in concert have abused state law.</u>

Bankruptcy judges may issue injunctions if they suspect violations of the law or inappropriate ex parte activity by a creditor. One bankruptcy court judge found "unnecessary, incomplete, and deceptive" ex parte activity and "an abuse of the judicial process," issuing an injunction against the parties and not the district court (where he was sitting by assignment). *In re Mahurkar Double Lumen Hemodialysis Catheter Patent Litig.*, 140 B.R. 969, 972, 974-75 (N.D. Ill. 1992). As Franklin American has sought two ex parte orders of default against Debtor, and violated state procedure in doing so, as well as knowingly frustrated the mediation settlement ordered by this Court, this Court may issue an injunction and certify questions of law to the Oklahoma Supreme Court pending a final trial on the merits.

Bankruptcy Courts may use equitable powers where "necessary" or "appropriate" – to faclitate the implementation of other bankruptcy code provisions, pursuant to Section 105. *In re Harris*, 312 B.R. 591, 597 (N.D. Miss. 2004)

8. <u>Section 105 can be used by this Court to craft a temporary remedy in the form of injunctive relief, given allegations of the Defendants' frustration of the court ordered mediation settlement</u>

6

The First Circuit has said that "a Court may invoke §105(a) if the equitable remedy utilized is demonstrably necessary to preserve a right elsewhere in the Code… ***the statutory contempt powers given to a bankruptcy court under §105(a) complement the inherent powers of a federal court to enforce its own orders***" (emphasis added). *In re Rivera Torres*, 309 B.R. 643, 647-48, 52 Collier Bankr. Cas. 2d (MB) 120, Bankr. L. Rep. (CCH) P 80130, 2004-2 U.S. Tax Cas. (CCH) P. 50379, 93A.F.T.R.2d 2004-2428 (B.A.P. 1st Cir. 2004).

A bankruptcy court may in fact enjoin a non-party who violates the confidentiality clause of an agreement involving Debtor. *See e.g. In re CEI Roofing, Inc.*, 315 B.R. 61 (Bankr. N.D. Tex. 2004), opinion issued, (August 2, 2004)(bankruptcy court has power to temporarily enjoin Debtor's former president and competitor from violating covenants and confidentiality provisions of former president's employment agreement). RCB was an actual party to the mediation agreement, and agreed for such agreement to be confidential "as a material term" and not to file documents adverse to Debtor except as "expressly" stated in the agreement, and to turn over a valid quitclaim deed to Debtor as consideration. As such, this Court may enjoin RCB from taking any action to validate the "Disclaimer" that Kyle Goodwin signed and filed on April 20, 2018, and may require RCB to take action to strike such document as violating the terms of the agreement, including the confidentiality clause. *Id.*

If a bankruptcy court can enjoin a non-party who has a contract with Debtor, then this Court can also enjoin parties to this case, including Franklin American and Fannie Mae (who claim contractual privity with Debtor) and who, in concert with the Oklahoma County Sheriff and RCB, have taken steps since April of 2018 to frustrate the mediation agreement.

## CONCLUSION

This Memorandum Brief is being submitted in anticipation of arguments likely to be presented on November 1, 2018, at an expedited hearing. Through this pleading, Debtor hopes to demonstrate to this honorable Court that he has made a good faith effort to ascertain the law as applied to the facts, in justifiably invoking the Court's equitable powers to issue a preliminary injunction against Defendants.

Respectfully submitted,

*[signature]* — Debtor
15721 Via Bella
Edmond OK 73013
405-420-9030

7

## NOTICE AND OPPORTUNITY FOR HEARING

**YOUR RIGHTS MAY BE AFFECTED. YOU SHOULD READ THIS DOCUMENT CAREFULLY AND CONSULT YOUR ATTORNEY ABOUT YOUR RIGHTS AND THE EFFECT OF THIS DOCUMENT. IF YOU DO NOT WANT THE COURT TO GRANT THE REQUESTED RELIEF, OR YOU WISH TO HAVE YOUR VIEWS CONSIDERED, YOU MUST FILE A WRITTEN RESPONSE OR OBJECTION TO THE REQUESTED RELIEF WITH THE CLERK OF THE UNITED STATES BANKRUPTCY COURT FOR THE WESTERN DISTRICT OF OKLAHOMA, 215 DEAN A. MCGEE AVENUE, OKLAHOMA CITY, OK 73102, NO LATER THAN 14 DAYS FROM THE DATE OF FILING OF THIS REQUEST FOR RELIEF, UNLESS ORDERED SOONER BY SEPARATE ORDER. YOU SHOULD ALSO SERVE A FILE-STAMPED COPY OF YOUR RESPONSE OR OBJECTION ON THE UNDERSIGNED MOVANT (AND OTHERS WHO ARE REQUIRED TO BE SERVED) AND FILE A CERTIFICATE OF SERVICE WITH THE COURT. IF NO RESPONSE OR OBJECTION IS TIMELY FILED, THE COURT MAY GRANT THE REQUESTED RELIEF WITHOUT A HEARING OR FURTHER NOTICE.**

**THE 14 DAY PERIOD DESCRIBED ABOVE INCLUDES THE THREE (3) DAYS ALLOWED FOR MAILING PROVIDED FOR IN BANKRUPTCY RULE 9006 (F).**

## CERTIFICATE OF SERVICE

Undersigned certifies that on 10-31-2018 the foregoing document was served, via United States Mail, 1st class postage pre-paid, and properly addressed to the following:

Oklahoma County District Attorney
c/o Rod Heggy
320 Robert S Kerr
County Building, 5th Floor
Oklahoma City OK 73102
Attorney for Oklahoma County Sheriff

Franklin American Mortgage
Corporation Company / Agent of Service
1833 South Morgan Road
Oklahoma City OK 73128

Scott Kirtley, Esq
Riggs Abney Law Firm
502 W. 6th Street
Tulsa, OK 74119-1010

Don Timberlake
PO Box 18486
Oklahoma City, OK 73154-0486
Attorney for Franklin American
and Fannie Mae in state court

Federal National Mortgage Assoc.
a/k/a Fannie Mae
3900 Wisconsin Ave.
Washington, D.C. 20016

RCB Bank
300 W. Patti Page
Claremore, OK 74017

/s/ _____
Alexander Bednar DEBTOR

8

**FILED**
**U.S. Bankruptcy Appellate Panel**
**of the Tenth Circuit**

**April 3, 2018**

PUBLISH

**Blaine F. Bates**
**Clerk**

## UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE TENTH CIRCUIT

| | |
|---|---|
| IN RE FRED DALE VAN WINKLE,<br><br>Debtor. | BAP No. NM-17-031<br>BAP No. NM-17-032<br>BAP No. NM-17-033 |
| TAMMY SPRAGUE, personal representative of the estate of Fred Dale Van Winkle,<br><br>Plaintiff – Appellee,<br><br>v.<br><br>JOHN WILLIAMS, ELLEN B. WILLIAMS, and BELLEVIEW VALLEY LAND CO., INC.,<br><br>Defendant – Appellants. | Bankr. No. 13-11743<br>Chapter 7<br><br>OPINION |

Appeal from the United States Bankruptcy Court
for the District of New Mexico

W.T. Martin, Jr. (Jennie D. Behles, Albuquerque, New Mexico with him on the brief) of Martin, Dugan & Martin, Carlsbad, New Mexico, Attorneys for Defendant – Appellants.

R. "Trey" Arvizu, III Las Cruces, New Mexico, Attorney for Plaintiff – Appellee.

Before **KARLIN**, Chief Judge, **NUGENT**, and **MOSIER**, Bankruptcy Judges.

**KARLIN**, Chief Judge.

John Williams, Ellen Williams, and Belleview Valley Land Co., Inc. (the "Appellants") appeal three bankruptcy court rulings: (1) the *Order Denying*

Ex 1

violation of the discharge injunction or for violation of a court order is reviewed for abuse of discretion.[22]

### III. Analysis

#### 1. The Bankruptcy Court's Jurisdiction

Appellants argue the bankruptcy court erred in determining it had jurisdiction over the adversary proceeding in light of the *Rooker-Feldman* doctrine. The *Rooker-Feldman* doctrine "precludes federal district courts from exercising appellate jurisdiction over actually-decided claims in state courts" and "adjudicating claims inextricably intertwined with previously-entered state court judgments."[23] This is because the Supreme Court is the only federal court empowered to exercise appellate jurisdiction to reverse or modify a state court judgment.[24] As very recently clarified by the Tenth Circuit Court of Appeals in *Mayotte v. U.S. Bank, N.A.*,[25] a *Rooker-Feldman* issue only exists to the extent a federal action "tries to *modify or set aside* a state-court judgment because the

---

(...continued)
*Auto-Owners Ins. Co. v. Summit Park Townhome Assoc.*, ___ F.3d ___, Nos. 16-1348, 16-1352, 2018 WL 1559980, at *7 (10th Cir. Mar. 30, 2018) (giving deference to trial court's interpretation of its own orders (citing *Chi., Rock Island & Pac. R.R. v. Diamond Shamrock Ref. & Mktg. Co.*, 865 F.2d 807, 811 (7th Cir. 1988))).

[22] *Peyrano v. Sotelo (In re Peyrano)*, No. EO-16-032, 2017 WL 2731299, at *3 (10th Cir. BAP June 26, 2017) (citing *Anchondo v. Anderson, Crenshaw & Assoc.*, 616 F.3d 1098, 1101 (10th Cir. 2010)) (reviewing award of attorneys' fees for abuse of discretion). Courts review the constitutionality of punitive damages de novo. *Culley*, No. NM-05-105, 2006 WL 2091199, at *2 (10th Cir. BAP July 24, 2006) (citing *Cooper Indus. Inc. v. Leatherman Tool Grp., Inc.*, 532 U.S. 424, 436 (2001)).

[23] *Culley*, 2006 WL 2091199, at *2 (citing *Mo's Express, LLC v. Sopkin*, 441 F.3d 1229, 1233 (10th Cir. 2006)) (explaining that in *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005), the Supreme Court has limited the *Rooker-Feldman* doctrine to "cases brought by state-court losers complaining of injuries caused by state-court judgments.").

[24] *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).

[25] *Mayotte v. U.S. Bank Nat'l Ass'n for Structured Asset Inv. Loan Tr. Mortg. Pass-Through Certificates, Series 2006-4*, 880 F.3d 1169, 1174 (10th Cir. 2018).

state proceedings should not have led to that judgment." In other words, there is a *Rooker-Feldman* issue if the federal suit alleges that a defect in the state court proceedings should invalidate the state judgment.

Applying this reasoning here, we must consider whether the success of the claims Sprague raised in the adversary proceeding was contingent upon demonstrating any prior state court judgment was reached in error. Sprague's adversary complaint sought damages for Appellants' violation of the discharge injunction under 11 U.S.C. § 542[26] and for violation of the Stipulated Order. Appellants admit no state court has made findings or entered a decision determining those issues. The only state court findings centered around whether Appellants could foreclose the Judgment Lien and the amount of the Deficiency Judgment; Sprague's complaint challenged none of those findings.

Furthermore, bankruptcy courts clearly have jurisdiction to review alleged violations of their own orders, including civil contempt matters arising out of core matters.[27] Issuing an order to enforce its own orders—the discharge order and the Stipulated Order—neither required the bankruptcy court to challenge the state court proceedings nor to set aside or unwind any state court decision as explained in *Mayotte*. Appellants argue that even if the state court had not yet issued a decision, *Rooker-Feldman* was nonetheless implicated because the parties had briefed some overlapping issues that the bankruptcy court might need to decide. They are wrong. The state court did not have the opportunity to enter a decision on those issues because the parties had agreed to stay the state court matters pending resolution of the adversary proceeding in bankruptcy court.

---

[26] All future references to "Code," "Section," and "§" are to the Bankruptcy Code, Title 11 of the United States Code, unless otherwise indicated.

[27] *In re Skinner*, 917 F.2d 444, 447-8 (10th Cir. 1990) (concluding bankruptcy court had authority to issue sanctions for violation of automatic stay); *see also In re Unioil*, 948 F.2d 678, 682 (10th Cir. 1991) (holding "bankruptcy court had the inherent power to enforce its [own] order").

In light of *Mayotte*, which was issued after the parties briefed the issue, but before oral argument (at which time Appellants still argued the doctrine applicable), it is simply frivolous to argue the bankruptcy court lacked jurisdiction.[28] Accordingly, the bankruptcy court committed no error in determining it had jurisdiction over Sprague's adversary complaint.

### 2. Certification of Issues to the New Mexico Supreme Court

"Whether to certify a question of state law to the state supreme court is within the discretion of the federal court."[29] Federal courts must "'apply judgment and restraint before certifying,' and 'will not trouble our sister state courts every time an arguably unsettled question of state law" arises.[30] Federal courts are bound to apply state law when necessary and "must determine what decision the state court would make if faced with the same facts and issue."[31]

As a preliminary matter, it is unclear whether Appellants are challenging the bankruptcy court's decision declining to certify questions, or this Court's own motions panel decision, which also denied certification. They elected not to brief the issue in their opening brief, instead incorporating by reference earlier briefing

---

[28] Appellants argued this Court should apply *Gogola v. Zingale*, 141 F. App'x 839 (11th Cir. 2005), an unpublished decision from the Eleventh Circuit, instead of *Mayotte*.

[29] *Armijo v. Ex Cam, Inc.*, 843 F.2d 406, 407 (10th Cir. 1988) (first citing *Lehman Bros. v. Schein*, 416 U.S. 386, 391 (1974); and then citing *Holler v. United States*, 724 F.2d 104, 105-06 (10th Cir. 1983)) (affirming denial of certification of issue to New Mexico Supreme Court); *Massengale v. Okla. Bd. of Exam'rs in Optometry*, 30 F.3d 1325, 1331 (10th Cir. 1994) ("Certification of state law questions is not automatic . . . but discretionary.").

[30] *Colony Ins. Co. v. Burke*, 698 F.3d 1222, 1235-36 (10th Cir. 2012) (quoting *Pino v. United States*, 507 F.3d 1233, 1236 (10th Cir. 2007)); *Armijo*, 843 F.2d at 407 ("Certification is not to be routinely invoked whenever a federal court is presented with an unsettled question of state law.") (citing *L. Cohen & Co. v. Dun & Bradstreet*, 629 F.Supp. 1419, 1425 (D. Conn. 1986)).

[31] *Armijo*, 843 F.2d at 407 (first citing *Farmers All. Mut. Ins. Co. v. Bakke*, 619 F.2d 885, 888 (10th Cir. 1980); and then citing *Hartford v. Gibbons & Reed Co.*, 617 F.2d 567, 569 (10th Cir. 1980)).

-10-

# UNITED STATES BANKRUPTCY APPELLATE PANEL
# OF THE TENTH CIRCUIT

| | |
|---|---|
| IN RE STEPHEN PAUL WALLACE, doing business as Wallace Real Estate Company, doing business as River Oaks Associates, doing business as Wallace Investments,<br><br>Debtor. | BAP No.   NO-04-048 |
| RONALD J. SAFFA, Individually and as Successor Co-Trustee of the Lorice T. Wallace Revocable Trust,<br><br>Plaintiff – Appellee,<br><br>v.<br><br>STEPHEN PAUL WALLACE,<br><br>Defendant – Appellant. | Bankr. No.  02-00073-M<br>Adv. No.    04-01038-M<br>Chapter     7 |

## JUDGMENT
Filed November 1, 2004

Before McFEELEY, Chief Judge, CLARK, and THURMAN, Bankruptcy Judges.

This case originated in the United States Bankruptcy Court for the Northern District of Oklahoma.

The judgment of that court is AFFIRMED.

For the Panel:

Barbara A. Schermerhorn, Clerk of Court

By: *Kccure*
Deputy Clerk

EX2



FILED
U.S. Bankruptcy Appellate Panel
of the Tenth Circuit

November 1, 2004

Barbara A. Schermerhorn
Clerk

BAP Appeal No. 04-48   Docket No. 28   Filed: 11/01/2004   Page: 1 of 7

PUBLISH

# UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE TENTH CIRCUIT

| | |
|---|---|
| IN RE STEPHEN PAUL WALLACE, doing business as Wallace Real Estate Company, doing business as River Oaks Associates, doing business as Wallace Investments,<br><br>Debtor. | BAP No.   NO-04-048 |
| RONALD J. SAFFA, Individually and as Successor Co-Trustee of the Lorice T. Wallace Revocable Trust,<br><br>Plaintiff – Appellee,<br><br>v.<br><br>STEPHEN PAUL WALLACE,<br><br>Defendant – Appellant. | Bankr. No.  02-00073-M<br>Adv. No.    04-01038-M<br>Chapter     7<br><br><br>OPINION |

Appeal from the United States Bankruptcy Court
for the Northern District of Oklahoma

Submitted on the briefs:*

Stephen P. Wallace, Pro Se.

Mark A. Craige of Morrel West Saffa Craige & Hicks, Inc., Tulsa, Oklahoma, for Appellee.

Before McFEELEY, Chief Judge, CLARK, and THURMAN, Bankruptcy Judges.

McFEELEY, Chief Judge.

---

\* The parties did not request oral argument, and after examining the briefs and appellate record, the Court has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. Bankr. P. 8012. The case is therefore ordered submitted without oral argument.

Defendant-Appellant/Debtor Stephen Paul Wallace ("Wallace") timely appeals a Default Judgment ("Default Judgment") entered on May 11, 2004, by the bankruptcy court for the Northern District of Oklahoma. The Default Judgment made a preliminary injunction permanent and imposed sanctions on Wallace in his individual capacity. Wallace argues that the Default Judgment is void and should be vacated because of invalid service of process.

The parties have consented to this Court's jurisdiction because they have not elected to have the appeal heard by the United States District Court for the Northern District of Oklahoma. 28 U.S.C. § 158(b)-(c); Fed. R. Bankr. P. 8001(e). We find no error in the bankruptcy court's determination that it had personal jurisdiction over Wallace and so affirm.

## I.   Background

On September 13, 2001, Wallace filed a voluntary petition for relief under Chapter 11 in the United States Bankruptcy Court for the Western District of Oklahoma. Subsequently, the case was transferred to the United States Bankruptcy Court for the Northern District of Oklahoma. On June 2, 2002, the bankruptcy court entered an order converting the case to a case under Chapter 7. Patrick J. Malloy III was appointed to serve as the Chapter 7 trustee ("Trustee").

On November 2, 2002, Plaintiff/Appellee Ronald J. Saffa ("Saffa") filed a proof of claim in the amount of $600,000 ("Claim"). The Claim was a general unsecured claim for damages as "a result of being sued by the Debtor in numerous, frivolous and meritless lawsuits." No objection to the Claim was filed. Later, Saffa and the Trustee entered into a Settlement on the Claim that was approved by the bankruptcy court ("Settlement Order"). Under the terms of the Settlement Order, Saffa reduced his Claim from $600,000 to $50,000 and the estate released Saffa from any and all claims that the estate might have relative to any acts or omissions which occurred prior to the effective date of conversion of the case from Chapter 11 to Chapter 7 on June 2, 2002. The Settlement Order

was not timely appealed.

On December 30, 2003, Wallace filed a Complaint and a Petition for Accounting against Saffa in the Circuit Court of DuPage County, Wheaton, Illinois ("Illinois Complaint"). The Illinois Complaint relies on events that occurred prior to June 2, 2002.

On February 2, 2004, Saffa filed an adversary complaint ("Original Complaint") against Wallace, obtained a Summons, and filed a motion for a Preliminary Injunction and Request for Expedited Hearing to enforce the Settlement Order and to prohibit Wallace's continuing violation of the automatic stay ("PI Motion"). On February 3, 2004, the Original Complaint, Summons, and the PI Motion were mailed, certified first class, to Wallace at the address on record in the bankruptcy court, 6528 E. 101st, D-1, #304, Tulsa, OK, 74133 ("Address of Record"). A return receipt was received by Saffa's counsel. Wallace did not file a responsive pleading, nor did he appear at the hearing on the PI Motion, held February 18, 2004. At the hearing, the bankruptcy court read into the record its findings of fact and conclusions of law, ruling that Wallace had violated the terms of the Settlement Order. On February 25, 2004, the bankruptcy court entered its "Order Granting Motion for Preliminary Injunction" ("PI Order"). The PI Order enjoined Wallace from filing any further civil actions against Saffa based on events that occurred prior to June 2, 2002, and ordered him to dismiss the Illinois Complaint. Wallace timely appealed the PI Order to this Court in *Saffa v. Wallace (In re Wallace)*, BAP No. NO-04-022.[1]

On March 9, 2004, Saffa filed a Second Amended Complaint ("Second Amended Complaint") against Wallace seeking a permanent injunction. The

---

[1] A panel of this court declined to address the merits of that appeal on the grounds that it was moot, because by the time the appeal was submitted to the panel the permanent injunction at issue here had been entered. *Saffa v. Wallace (In re Wallace)*, BAP No. NO-04-022, 2004 WL 1664060 (10th Cir. BAP July 19, 2004).

-3-

Trustee served the Second Amended Complaint on Wallace by mailing it, first class postage prepaid, to the Address of Record, and an affidavit of service was filed so stating. Wallace never answered the Second Amended Complaint. Accordingly, the Trustee filed an Application for Default Judgment on the Second Amended Complaint ("Application"), and on April 2, 2004, this Application was mailed, first class postage prepaid, to Wallace at the Address of Record. The Trustee's service of the Application is evidenced by a certificate of mailing that was filed in conjunction with the Application. An Order setting a hearing on the Application was mailed to Wallace by first class mail postage prepaid to the Address of Record on April 6, 2004.

On May 11, 2004, the bankruptcy court entered the Default Judgment finding 1) the bankruptcy court had personal jurisdiction over Wallace because Wallace had been properly served; 2) Wallace had violated the automatic stay; 3) there were grounds for making the preliminary injunction a permanent injunction. The Default Judgment made the preliminary injunction permanent and enjoined the Debtor and Wallace in his individual capacity from filing any other lawsuits based on events prior to June 2, 2002.

## II. Discussion

Wallace argues that the Default Judgement is void on the grounds that he was not properly served with the Original Complaint, Second Amended Complaint or the Application for Default Judgment.[2]

Federal Rule of Bankruptcy Procedure 7055 makes Federal Rule of Civil Procedure 55 ("Rule 55") applicable in adversary proceedings. Rule 55(c) provides that a default judgment may be set aside in accordance with the

---

[2] It is not clear from Wallace's brief whether he is arguing that he was not properly served with respect to all of the court papers or a particular one; therefore, we will refer to all relevant court documents relating to the Default Judgment.

subsections of Federal Rule of Civil Procedure 60(b) ("Rule 60(b)"). One such subsection provides that a default judgment may be set aside if the judgment is void.[3] Fed. R. Civ. P. 60(b)(4). A judgment is void if it was entered by a court that lacked personal jurisdiction over a party. *See, e.g., United States v. Buck*, 281 F.3d 1336, 1344 (10th Cir. 2002); 18 James Wm. Moore et al., *Moore's Federal Practice* § 130.04[3], at 130-14.1 (3d ed. 2001). In this case, the bankruptcy court concluded that Wallace had been properly served and, therefore, it had jurisdiction to enter the Default Judgment against him. Our de novo review leads us to conclude that the bankruptcy court did not err. *See, e.g., Gschwind v. Cessna Aircraft Co.*, 232 F.3d 1342, 1345 (10th Cir. 2000) (denial of Rule 60(b)(4) motion is reviewed de novo).

Personal jurisdiction in a civil proceeding is obtained by service of a summons on the defendant. Service of a summons in an adversary proceeding commenced in a bankruptcy case is governed by Federal Rule of Bankruptcy Procedure 7004 ("Rule 7004"). Rule 7004 incorporates the procedures of Federal Rule of Civil Procedure 4 ("Rule 4") and expands them by providing that

> in addition to the methods of service authorized by Rule 4(e) - (j) F.R. Civ. P., service may be made within the United States by first class mail postage prepaid . . . [u]pon the debtor . . . until the case is dismissed or closed, by mailing a copy of the summons and complaint to the debtor at the address shown in the petition or statement of affairs, or such other address as the debtor may designate in a filed writing . . . .

Fed. R. Bankr. P. 7004(b)(9). Service is considered complete when mailed. *Coggin v. Coggin (In re Coggin)*, 30 F.3d 1443, 1450 n.8 (11th Cir. 1994), *abrogated on other grounds, Kontrick v. Ryan*, 540 U.S. 443 (2004). Proof of

---

[3] In his brief, Wallace also argues that this Court has "judicial notice and actual notice" that Saffa has "criminally converted the Wallace Family's $30,000,000 Estate for his (their) own exclusive use and benefit." In essence, this argument addresses the merits of the Claim and the Settlement Order. As the Settlement Order resolved the Claim and is a final order that is not on appeal here, we may not address this argument.

service is by affidavit. Fed. R. Bank. P. 7004(a); Fed. R. Civ. P. 4(1). When the complaint and summons are served in accordance with Rule 7004 and Rule 4 then the court will have personal jurisdiction over "the person of any defendant with respect to a case . . . arising in or related to a case under the Code." Fed. R. Bankr. P. 7004(f).[4]

The bankruptcy court found that it had in personam jurisdiction over Wallace as Saffa had mailed all relevant documents to Wallace's Address of Record, and Saffa, as required, filed with the bankruptcy court a supporting affidavit. Wallace does not dispute the court's finding that the relevant court documents were mailed to his Address of Record. His argument focuses on the validity of that address by contending that the bankruptcy court had notice that the Address of Record was not Wallace's homestead.

This argument has no merit.

Rule 7004(b)(9) provides that service of a summons and complaint on a debtor can be made by mailing it to the address as shown in the petition or statement of affairs. Federal Rule of Bankruptcy Procedure 7005 incorporates Federal Rule of Civil Procedure 5(b)(2)(B), which requires that service of an application for default judgment be made by mailing it to the defendant's last known address. The evidence supports the bankruptcy court's finding that all relevant documents, namely the Original Complaint and Summons, the Second Amended Complaint, and the Application, were mailed to Wallace's Address of Record. There is no evidence that Wallace made any request, written or otherwise, to change his Address of Record. Rule 7004 has no requirement that service may only be effectuated at an individual's homestead. Furthermore, Wallace did not allege nor did he proffer any evidence to the bankruptcy court

---

[4] Rule 55, governing Default Judgments, states that an application for a default judgment must be served on the defendant if the defendant has appeared in the action. Wallace did not so appear.

-6-

that he did not receive the Original Complaint and Summons, the Second Amended Complaint, and the Application. The bankruptcy court correctly found that it had personal jurisdiction over Wallace.[5]

### III. Conclusion

For the reasons stated above, the Judgment is AFFIRMED.

---

[5] Wallace argues that service was improper because the agent who signed the return receipt on the certified letter containing the Original Complaint and Summons was not authorized to accept service of process. This argument is without merit. Rule 7004(b)(9) does not require the signature of an authorized agent. Because the Original Complaint and Summons were mailed to the Address of Record, service was proper.

-7-